DOLORES NIEDER, Indiv. and as Special Adm'r of the Estate of John Mowery, Deceased, Plaintiff-Appellant, *v.* JOHN WAYNE GACY *et al.*, Defendants (Department of Police of the City of Chicago *et al.*, Defendants-Appellees).

First District (3rd Division)   No. 82—3062

Opinion filed February 1, 1984.

Barry E. Witlin, of Chicago, for appellant.

James D. Montgomery, Acting Corporation Counsel, of Chicago (Jerome A. Siegan and Mary K. Rochford, Assistant Corporation Counsel, of counsel), for appellee Department of Police of the Chicago of Chicago.

Thomas J. Miller, Attorney General, of Des Moines, Iowa (Thomas D. McGrane, Assistant Attorney General, of counsel), for appellee Iowa State Board of Parole.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Dolores Nieder, individually and as special administrator of the estate of her son, John Mowery, brought this wrongful death action against defendants John Wayne Gacy, the city of Chicago, Illinois Department of Corrections and Lemuel Sykes, Administrator, and the Iowa State Board of Parole. The trial court entered a default judgment against Gacy but dismissed the other defendants. Plaintiff appealed all the dismissals but did not object when this court dismissed her appeals against Sykes and the Illinois Department of Corrections for want of prosecution. Plaintiff now appeals the orders dismissing the city of Chicago and the Iowa State Board of Parole.

We first address plaintiff's contention that the trial court erred in dismissing her action against the city of Chicago.

Plaintiff's complaint charged that on September 29, 1977, she re-

ported her son missing to the Chicago police department; that her son's body was found on Gacy's property on January 26, 1979; and that Gacy had assaulted and battered her son resulting in his death.

In count II plaintiff alleged that Chicago police arrested Gacy in February 1971 and numerous times thereafter knowing that he was a convicted felon and a parolee; that the police department owed a duty of care to plaintiff's decedent; and that it breached that duty by failing to protect the decedent from the actions of Gacy, by failing to investigate missing persons cases and by engaging in other wilful and wanton acts. Plaintiff asserted that these wilful and wanton acts proximately caused decedent's death.

The trial court granted the city of Chicago's motion to dismiss based upon sections 4—102 and 4—107 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1981, ch. 85, par. 1—101 *et seq.*). Section 4—102 provides:

> "Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes and failure to apprehend criminals." (Ill. Rev. Stat. 1981, ch. 85, par. 4—102.)

Section 4—107 provides:

> "Neither a local public entity nor a public employee is liable for an injury caused by the failure to make an arrest or by releasing a person in custody." Ill. Rev. Stat. 1981, ch. 85, par. 4—107.

Plaintiff contends, however, that these immunity provisions must be read in conjunction with section 2—202 of the act which she argues limits the extent of the immunity granted in the police immunity provisions. Section 2—202 provides:

> "A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes wilful and wanton negligence." (Ill. Rev. Stat. 1981, ch. 85, par. 2—202.)

Pursuant to this section plaintiff maintains that the city of Chicago may be liable for the actions of its police department if such acts are wilful and wanton, and that since her complaint contains such allegations, the action should not have been dismissed against the city of Chicago.

■ Plaintiff concedes that the identical argument was specifically rejected in *Jamison v. City of Chicago* (1977), 48 Ill. App. 3d 567, 363 N.E.2d 87, but contends that the holding in *Jamison* was erroneous.

The *Jamison* court held that sections 4—102 and 4—107, the specific police immunity provisions, prevailed over section 2—202, the general immunity provisions relating to any public employee enforcing any law. We agree with the reasoning in *Jamison* and therefore find that sections 4—102 and 4—107 bar this action against the city of Chicago for the actions of its police officers. See also *LeMenger v. Fitzgerald* (1971), 1 Ill. App. 3d 803, 274 N.E.2d 913.

In so holding, we reject plaintiff's contention that the decision in *Huey v. Town of Cicero* (1968), 41 Ill. 2d 361, 243 N.E.2d 214, requires a reversal in the present case. In *Huey*, the court discussed generally the immunity of municipalities for the failure to provide police and fire protection and noted that exceptions to the immunity of municipalities are recognized only when the municipality assumes a special duty of care to a particular individual. The court found that no special duty was alleged in its case and therefore upheld the trial court's dismissal of the action. (Accord, *Marvin v. Chicago Transit Authority* (1983), 113 Ill. App. 3d 172, 446 N.E.2d 1183.) Similarly here, plaintiff has not alleged that a special duty was owed to decedent individually. As in *Huey*, plaintiff did not allege that the decedent had requested police protection or that the police department knew that he was in some peculiar danger. Moreover, to hold that under this complaint the city owed a special duty of care to decedent to protect him from the criminal acts of Gacy would impose an all but impossible burden, making the city essentially an insurer of the personal safety of every missing person.

Since we agree that the complaint failed to state a valid cause of action against the city of Chicago, we need not consider the city's argument that plaintiff failed to file a timely statutory notice.

■ We next address plaintiff's contention that the trial court erred in dismissing her complaint against the Iowa State Board of Parole.

In count IV, plaintiff alleged that Gacy had been sentenced in 1968 by an Iowa court to a 10-year prison term for the offense of sodomy. In 1970, the parole board released Gacy on parole to Illinois pursuant to the Interstate Probation and Parole Compact to which both Illinois and Iowa are parties. The complaint further alleged that the parole board's wilful and wanton acts including its premature release of Gacy, its failure to supervise Gacy while on parole in Illinois, and its failure to revoke Gacy's parole when he was arrested in Illinois in 1971, proximately caused decedent's death on September 25, 1977. Plaintiff argues that these wilful and wanton actions were sufficient to subject the parole board to the jurisdiction of Illinois courts.

A State court may exercise personal jurisdiction over a nonresident defendant only if there exist certain minimal contacts between defendant and the forum State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. (*World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559; *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 2d 95, 66 S. Ct. 154.) To establish minimum contacts, it is essential that there be some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum State, thereby invoking the benefits and protections of the laws of that State. *International Shoe Co. v. Washington*; *Coca-Cola Co. v. A. Epstein & Sons International, Inc.* (1980), 89 Ill. App. 3d 253, 411 N.E.2d 917.

In the present case, none of the parole board's actions of which plaintiff complains demonstrate the parole board's invocation of the benefits and protections of the laws of Illinois. The parole board engaged in the alleged acts in Iowa pursuant to Iowa law. There are no allegations that it performed any acts in Illinois or conducted any business in Illinois. Instead, plaintiff appears to argue that because the consequences of the parole board's actions, namely the killing of decedent by Gacy, occurred in Illinois, the parole board's actions constituted the commission of tortious acts in Illinois which thereby established the requisite minimum contacts.

Jurisdiction over a nonresident defendant may be obtained if the defendant has committed a tortious act in Illinois. (Ill. Rev. Stat. 1981, ch. 110, par. 2—209(a)(2).) It is also true that physical presence in Illinois is not necessary for the commission of a tortious act in Illinois. (*Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 176 N.E.2d 761.) To satisfy this statutory provision here, however, a less tenuous connection between the parole board's acts and Illinois is required. (See *Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 427 N.E.2d 1203.) The decedent was killed by Gacy seven years after the parole board's release of Gacy to Illinois and five years after the parole period expired. The decedent's death clearly is too remote a consequence of the parole board's actions to conclude that the board's actions fall within this jurisdictional base. (*Cf. Martinez v. California* (1979), 444 U.S. 277, 62 L. Ed. 2d 481, 100 S. Ct. 553.) Nor does the fact that the parole board's actions permitting Gacy to reside in Illinois during his parole period were authorized by the Interstate Probation and Parole Compact, a reciprocal agreement between Iowa and Illinois (Iowa Code Ann. sec. 247.40 (West Supp. 1982); Ill. Rev. Stat. 1981, ch. 38, par. 1003—3—

11), make the connection between the parole board and Illinois any less tenuous. Thus, we conclude that plaintiff failed to establish minimum contacts between the parole board and Illinois, and that the trial court properly dismissed the complaint against the Iowa State Board of Parole.

For the reasons stated, the orders of the circuit court of Cook County are affirmed.

McGILLICUDDY and WHITE, JJ., concur.