Docket No. 84160–Agenda 17–November 1997.

In re
 APPLICATION OF THE COUNTY COLLECTOR OF DU PAGE COUNTY FOR JUDGMENT FOR DELINQUENT TAXES FOR THE YEAR 1992 (County Collector of Du Page County, Appellee, v. Anvan Midwest 
et al.
, Appellants).

Opinion filed February 20, 1998.

JUSTICE MILLER delivered the opinion of the court:

Several objectors filed in the circuit court of Du Page County objections to an application of the Du Page County collector for judgment for delinquent 1992 real estate taxes. The objections encompassed numerous Du Page County taxing districts. However, only issues concerning park districts are presented in this appeal. In order to simplify the objections relating to park districts, a stipulation was agreed to in the trial court in which Lisle Park District served as a test case.

The trial judge granted the objectors' motion for partial summary judgment. The judge found that the park district's tax extensions, which paid for bonds issued to refund preexisting debt instruments, violated the “tax cap” provided in the Property Tax Extension Limitation Act (the Act) (35 ILCS 245/1–1 
et seq
. (West 1992)). The judge ordered that the taxes extended in excess of the cap be refunded.

The Du Page County collector filed a motion for rehearing. The collector argued that the judge's ruling unconstitutionally impairs the contract rights of those who hold preexisting debt instruments because the park district is now limited in its ability to extend taxes and refund the preexisting debt instruments. The judge, upon reconsideration, agreed with the collector.

The judge found that section 1–7(b) of the Act (35 ILCS 245/1–7(b) (West 1992)) violates the contract clause of the federal and state constitutions (U.S. Const., art. I, §10; Ill. Const. 1970, art. I, §16) by impairing the park district's ability to refund the preexisting debt instruments. Thus, the judge denied the objectors' motion for partial summary judgment and overruled the objections to the bond levy of Lisle Park District.

The objectors appealed to the appellate court. The appellate court transferred the appeal to this court under Supreme Court Rule 365 (155 Ill. 2d R. 365), which provides for the transfer of cases appealed to the wrong court. The appellate court found that the appeal was properly before this court under Supreme Court Rule 302(a) (134 Ill. 2d R. 302(a)). Because the trial judge held a state statute invalid, the appeal is properly before us under Rule 302(a).

BACKGROUND

Several property tax objectors are involved in this case. The objectors designated Robert Pryor as the lead objector. The objectors paid their 1992 real estate taxes under protest and filed in the trial court various objections to taxes extended by numerous Du Page County taxing districts. In order to streamline the objections relating to the 21 park districts, a stipulation was agreed to in which Lisle Park District served as a test case to address common issues. Taxing districts other than park districts are not included in this appeal.

The Property Tax Extension Limitation Act (the Act) became effective on October 1, 1991. See Pub. Act 87–17, eff. October 1, 1991 (adding 35 ILCS 245/1–1 
et seq.
 (West 1992)). Before the Act's effective date, the park district had issued alternate bonds and installment contract certificates pursuant to the Local Government Debt Reform Act (30 ILCS 350/1 
et seq.
 (West 1992)) and the Park District Code (70 ILCS 1205/6–1 
et seq.
, 8–15 (West 1992)). For ease of reference, we refer to these preexisting debt instruments as “initial bonds.” The Local Government Debt Reform Act's definition of “bonds” includes installment contracts. See 30 ILCS 350/3(d) (West 1992).

After the Act's effective date, the park district issued nonreferendum general obligation bonds in order to meet the park district's obligations on the initial bonds. This “refunding” of the initial bonds is provided for in the Local Government Debt Reform Act (see 30 ILCS 350/3(d), 11 (West 1992)), the Park District Code (see 70 ILCS 1205/6–1, 6–4, 8–15 (West 1992)), and the Park District Refunding Bond Act (70 ILCS 1270/0.01 
et seq.
 (West 1992)). For ease of reference, we refer to these subsequent bonds as “refunding bonds.”

The objectors argued in the trial court, and argue here, that the property taxes extended to pay for the park district's refunding bonds exceed the extension limitation (tax cap) found in section 1–5 of the Act. See 35 ILCS 245/1–5 (West 1992). Unless approved by referendum or otherwise excluded, property tax rate increases are capped at either 5% or the percentage increase in the Consumer Price Index for the previous year, whichever is less. See 35 ILCS 245/1–5 (West 1992). The objectors claim they are entitled to a tax refund because the taxes extended to pay for the refunding bonds exceed the cap, were not approved by referendum, and are not otherwise excluded.

The objectors rely on section 1–7 of the Act. Section 1–7(a) provides that before levying a new rate or rate increase, a taxing district “shall submit the new rate or rate increase to direct referendum.” 35 ILCS 245/1–7(a) (West 1992). Section 1–7(b) provides:

“Notwithstanding the requirements of subsection (a), any park district which is a taxing district subject to this Act which is authorized to issue general obligations bonds or other general obligations payable from taxes may issue those bonds or other obligations without direct referendum; provided however, that the extension to pay debt service on such obligations shall be part of the aggregate extension subject to the extension limitation under this Act.” 35 ILCS 245/1–7(b) (West 1992).

Based on section 1–7(b), the objectors claim that the park district's extensions to pay for its nonreferendum refunding bonds must: (1) be included in the aggregate extension; and (2) be subject to the Act's extension limitation (tax cap).

The collector, however, argued in the trial court, and argues here, that the objectors have misinterpreted sections 1–5 and 1–7 of the Act. According to the collector, section 1–7 focuses on new tax rates or tax rate increases; it does not address the refunding of debt instruments that predate the effective date of the Act. Because section 1–7 focuses on new tax rates or tax rate increases, the collector argues that the section does not apply to the park district's refunding bonds.

In addition, the collector states that although section 1–7(b) uses the term “aggregate extension,” the definition of that term is found in section 1–5 of the Act. The collector notes that section 1–5's definition of aggregate extension specifically excludes, among other things, the refunding of preexisting debt instruments that predate the effective date of the Act. In relevant part, section 1–5 of the Act provides:

“ `Aggregate extension' means the annual corporate extension for the taxing district and those special purpose extensions that are made annually for the taxing district, excluding special purpose extensions: *** (3) made for any taxing district to pay interest or principal on bonds issued to refund or continue to refund those bonds issued before the effective date of this Act; *** [and] (7) made for payments due under installment contracts entered into before the effective date of this Act ***.” 35 ILCS 245/1–5 (West 1992).

The collector argues that when the term “aggregate extension” is used in section 1–7(b), it is the definition found in section 1–5 which controls the term's meaning. Thus, the collector argues that under section 1–5 the park district's refunding bonds issued to meet the district's obligations on its initial bonds, which were issued before the effective date of the Act, are excluded from the aggregate extension subject to the Act's tax cap.

Further, the collector claims that if section 1–7(b) were to apply to the taxes extended by the park district to pay for its refunding bonds, then the initial bond holders would suffer an unconstitutional impairment of their contract rights. The collector argues that a cap on extensions to pay for refunding bonds would limit the park district's ability to meet its obligations on the initial bonds.

The trial judge initially agreed with the objectors and granted their motion for partial summary judgment. The collector filed a motion for rehearing. In the motion, the collector repeated his statutory argument. The collector also argued that the judge's ruling impairs the contract rights of initial bond holders in violation of the contract clause of the federal and state constitutions (U.S. Const., art. I, §10; Ill. Const. 1970, art. I, §16).

The collector explained that when the initial bond holders provided credit to the park district, they were secured by the park district's ability to issue refunding bonds not subject to referendum. These refunding bonds would be paid for by tax extensions unencumbered by caps. Given the judge's construction of the Act, however, the collector argued that the security provided to the initial bond holders is now less valuable because tax caps limit the park district's ability to extend taxes and pay creditors via refunding bonds.

Prior to the resolution of the collector's rehearing motion, the Illinois Association of Park Districts sought leave to intervene on an 
amicus curiae
 basis. In addition, Wood Dale Park District and Lisle Park District sought leave to intervene as parties. Further, the objectors filed a response to the collector's motion and argued that rehearing was unwarranted. The judge allowed the collector's motion for rehearing and granted the intervention petitions.

Upon reconsideration of the contract impairment issue, the judge agreed with the collector. The judge found that the Act impaired the preexisting contracts between the park district and the initial bond holders. The judge stated, “[T]herefore I find it [the Act] violative of both the Federal and State constitutional protection in that regard.” Accordingly, the judge denied the objectors' motion for partial summary judgment and overruled their objections to the bond levy of Lisle Park District. It is from this ruling that the objectors have appealed.

DISCUSSION

The fundamental principle of statutory construction is to ascertain and give effect to the intention of the legislature. 
Varelis v. Northwestern Memorial Hospital
, 167 Ill. 2d 449, 454 (1995). Because the language used by the legislature is the best indication of legislative intent, courts look first to the words of the statute. 
Nottage v. Jeka
, 172 Ill. 2d 386, 392 (1996). With this in mind, we examine sections 1–5 and 1–7 of the Property Tax Extension Limitation Act.

Section 1–5 of the Act provides that taxes included in the aggregate extension are subject to a property tax extension limitation (tax cap) unless approved by referendum or otherwise excluded. Section 1–5 defines “aggregate extension” and excludes from its definition eight categories of tax extensions. Under exclusion (3), extensions “to pay interest or principal on bonds issued to refund or continue to refund those bonds issued before the effective date of this Act” are excluded from the aggregate extension. 35 ILCS 245/1–5 (West 1992). “It is well established that when a statute defines the very terms it uses, `those terms must be construed according to the definitions contained in the act.' [Citation.]” 
Garza v. Navistar International Transportation Corp.
, 172 Ill. 2d 373, 379 (1996).

In the case before us, the park district issued alternate bonds and installment contract certificates (initial bonds) prior to the effective date of the Act. In order to meet its preexisting obligations on these initial bonds, the park district issued, subsequent to the Act's effective date, refunding bonds to be paid for by property tax extensions. Given section 1–5's definition of aggregate extension and its exclusions, we believe that the park district's extensions, which are used to pay for refunding bonds to meet preexisting obligations on initial bonds issued prior to the Act's effective date, are excluded from the aggregate extension. Since the park district's extensions are excluded from the aggregate extension, the extensions are not subject to the Act's cap.

The objectors claim, however, that section 1–7(b) supersedes the definition of aggregate extension found in section 1–5. The objectors argue that the park district may issue refunding bonds as long as the park district's extensions to pay for the refunding bonds are a “part of the aggregate extension subject to the extension limitation.” 35 ILCS 245/1–7(b) (West 1992). Given the language of section 1–7(b), the objectors argue that the park district's refunding bonds are included in the aggregate extension subject to the Act's tax cap. We disagree.

The term “aggregate extension” used in section 1–7(b) is defined in section 1–5. The plain language of the Act provides that the definition of the term “aggregate extension” is to be “used in this Act.” 35 ILCS 245/1–5 (West 1992). Therefore, the term aggregate extension as used in section 1–7(b) has the meaning given to it in section 1–5, which includes the listed exclusions. Because the park district's refunding bonds are excluded from the definition of aggregate extension in section 1–5, the refunding bonds remain excluded when the term is used in section 1–7(b).

In addition, section 1–7(b) must be considered within the overall context of section 1–7. Section 1–7(a) provides for referendum procedures when a taxing district seeks to impose new rates or increased rates. See 35 ILCS 245/1–7(a) (West 1992). Section 1–7(b) provides that “[n]otwithstanding the requirements of subsection (a),” a park district is subject to different referendum procedures than are other taxing districts. 35 ILCS 245/1–7(b) (West 1992). Had the legislature also intended to supersede the definition of aggregate extension found in section 1–5, we believe the legislature would have said so.

Because we believe that the application of the tax cap to refunding bonds is excluded by section 1–5 of the Act, we do not reach the constitutional issue addressed in the trial court. The judge's constitutional ruling was premised on a finding under section 1–7(b) that the park district's property tax extensions are included in the aggregate extension and are thus subject to the Act's tax cap. We find, however, that under section 1–5 of the Act the park district's extensions are excluded from the aggregate extension. Accordingly, the park district's extensions are not subject to the Act's tax cap and no contract impairment issue is presented.

As demonstrated above, we disagree with the trial judge's interpretation of sections 1–5 and 1–7(b) of the Act; nevertheless, we affirm the judgment of the trial court denying the objectors' motion for summary judgment and overruling the objections to the bond levy of Lisle Park District. “[A] reviewing court may sustain the decision of the trial court on any grounds called for by the record, regardless of whether the trial court made its decision on the proper ground.” 
Estate of Johnson v. Condell Memorial Hospital
, 119 Ill. 2d 496, 502 (1988). The objectors' motion was properly denied and the objections were properly overruled, although not for the reason relied on by the trial judge. Instead, these rulings were proper because the park district's extensions are excluded from the aggregate extension and are not subject to the Act's tax cap.

In addition, we address two other matters raised by the objectors. First, the objectors argue that the trial judge abused his discretion in granting the collector's motion for rehearing. Relying on 
Kaiser v. MEPC American Properties, Inc.
, 164 Ill. App. 3d 978, 987 (1987), the objectors claim that rehearing was unwarranted. We disagree.

Under 
Kaiser
, one of the purposes of rehearing is to bring to the court's attention “errors in the court's previous application of existing law.” 
Kaiser
, 164 Ill. App. 3d at 987. In this case, the judge granted rehearing to consider an issue that was not fully developed initially. Upon reconsideration, the judge changed his ruling in light of the parties' additional memoranda and arguments. We believe no abuse of discretion occurred when the judge granted rehearing in order to consider a potential error in his previous application of the law.

Second, the objectors argue that the trial judge erred in allowing the Illinois Association of Park Districts, Wood Dale Park District, and Lisle Park District to intervene pursuant to section 2–408 of the Code of Civil Procedure (735 ILCS 5/2–408 (West 1992)). The record reveals that the Illinois Association of Park Districts sought permissive intervention under section 2–408(b). The Wood Dale and Lisle park districts sought to intervene as of right (section 2–408(a)), and in the alternative, permissively (section 2–408(b)). Although all three parties were allowed to intervene, the record does not reveal whether the Wood Dale and Lisle park districts were allowed to intervene as a matter of right or permissively.

In either event, the decision to grant intervention is a matter of judicial discretion that will not be reversed on appeal unless an abuse of discretion is shown. See 
Soyland Power Cooperative, Inc. v. Illinois Power Co.
, 213 Ill. App. 3d 916, 918 (1991) (intervention as of right); 
Maiter v. Chicago Board of Education
, 82 Ill. 2d 373, 382 (1980) (permissive intervention). We believe that the objectors have failed to show that the judge abused his discretion in allowing intervention.

The intervenors sought to intervene when a factual issue arose that called into question the continuing viability of the test case stipulation. Under this circumstance, we believe that the petitions to intervene were timely. See 735 ILCS 5/2–408(b) (West 1992). Also, most of the 21 park districts involved in this case agreed to a test case stipulation. This indicates that common questions of law and fact were presented. See 735 ILCS 5/2–408(b)(2) (West 1992). Thus, the criteria for permissive intervention were satisfied.

CONCLUSION

For the foregoing reasons, we find that the park district's tax extensions, which pay for refunding bonds to meet preexisting obligations on initial bonds issued prior to the Act's effective date, are excluded from the aggregate extension and are not subject to the Act's tax cap. Thus, we affirm the denial of the objectors' motion for partial summary judgment and find that the trial judge properly overruled the objections to the bond levy of Lisle Park District.

Affirmed
.